IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 21, 2010 Session

## HAROLD JAMES GREENLEAF, JR. v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F-62900     Don Ash, Judge**

_____

**No. M2009-01975-CCA-R3-CD - Filed June 4, 2010**

_____

The Petitioner, Harold James Greenleaf, Jr., appeals from the order of the trial court denying his petition requesting forensic DNA analysis. Upon his plea of guilty in 2000, the Petitioner was convicted of second degree murder and sentenced to forty years in the Department of Correction. The Petitioner seeks DNA testing of evidence related to the investigation and prosecution. After our review of the record, we affirm the judgment of the Rutherford County Circuit Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Joe Brandon, Jr., Smyrna, Tennessee, for the appellant, Harold James Greenleaf, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; and William Whitesell, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

The Petitioner was initially charged with the first degree murder of Lea Smotherman Holliday ("the victim"). In November 2000, he pleaded guilty to and was convicted of second degree murder. See Tenn. Code Ann. § 39-13-210. In exchange for his guilty plea, he received a sentence of forty years at 100%.

On February 26, 2009, the Petitioner filed a petition seeking DNA analysis under the Post Conviction DNA Analysis Act of 2001. See Tenn. Code Ann. §§ 40-30-301 to -313. He requested testing on eleven items: an earring, leg brace, beer can, blood-stained samples from the passenger-side rear seat of his car, carpet from under the passenger-side rear seat, cigarette with saliva, blood-stained sample from the front seat headrest, large rock with blood spatter, the victim's bloody blue jeans, blood or skin cells/materials from under the victim's fingernails, and all hair follicles found on or near evidence collected during the investigation. DNA analysis was not performed on these items per the request of the district attorney general. The Petitioner contended that testing these items would "establish the true perpetrator of the crime" and would "conclusively prove [his] innocence."

The State answered the petition. The State responded that all of the evidence was available for testing except the beer can (but a swab was available), the rear seat exhibit requested by Petitioner (but numerous samples from the rear seat existed), and any blood or skin material (there was no record that any samples were obtained). The State disagreed with the Petitioner's contention that a reasonable probability existed that the Petitioner would not have been convicted if exculpatory results had been obtained through DNA analysis because the Petitioner confessed to said crime, there was compelling evidence of the Petitioner's guilt, and the Petitioner voluntarily pleaded guilty.

A hearing was held on September 15, 2009. First to testify was Detective Todd Sparks, who was involved in investigating the Petitioner for the October 14, 1999 murder of the victim. The victim was discovered in a "creek bed area off of County Farm Road," which was a public area. There was a lot of blood present at the crime scene and found inside the Petitioner's car; there appeared to be signs of struggle.

Detective Sparks was present when the Petitioner was interviewed. According to Det. Sparks, the Petitioner made some initial statements that the blood in his vehicle was from a dog. He thereafter confessed to the murder, stating that, during an altercation between himself and the victim, he beat her about the face and head with a wood post having at least one nail protruding from it. The Petitioner relayed that the initial assault started inside his vehicle. Detective Sparks believed that both an audio and video recording were made of this confession. Detective Sparks testified that there was no evidence that indicated that anyone other than the Petitioner was involved in the murder. The Petitioner was arrested on November 14, 1999. According to Det. Sparks, the blood on the post matched the victim's DNA, and tests were run on the blood found in the Petitioner's car, which showed that the blood was that of the victim, not that of a dog.

Detective James Harrell, one of the lead detectives in the Petitioner's case, testified next. Detective Harrell confirmed that the Petitioner had confessed to the murder and that

he did not mention anyone else being involved in the crime. He also relayed that there was evidence that a struggle took place and that the victim died from blunt force trauma to the head. A wooden post with nails protruding from it was located at the crime scene, which object matched the fatal wounds to the victim; it also supported the Petitioner's confession that he beat the victim with a piece of wood. According to Det. Harrell, the Petitioner also used his elbow to strike the victim. Blood on the wooden post was determined to be the victim's. Finally, Det. Harrell stated that, in the ten years since the Petitioner's guilty plea, the Petitioner had not contacted him to claim innocence.

Next to testify was Tennessee Bureau of Investigation ("TBI") Special Agent Q. D. Pillow. Agent Pillow prepared several serology and DNA reports in the Petitioner's case. He tested the wooden post found at the crime scene and determined that the victim's blood was present. Agent Pillow also found the victim's blood present on the rear passenger-side seatbelt of the Petitioner's car. Pursuant to a request from the district attorney general, no further testing of the items collected at the crime scene was performed, including testing any of the evidence for the presence of the Petitioner's blood. However, it was not unusual for the district attorney general to request no additional testing when a plea agreement had been reached, and the TBI actually asked to be notified in such a case.

The Petitioner then testified. At first the Petitioner stated that he was innocent of the victim's murder, but he later equivocated that he did not think he did it. He relayed that, at the time of the victim's death, he was "here and there" and "junked out on dope, drunk all the time." Additionally, he stated, "It's hard to say what went on. But I believe the DNA will clear me." The Petitioner claimed that a blood sample was taken from him for DNA testing; he did not know why analysis was never performed. When asked if he had made a confession to the murder, he replied that he did not remember. He admitted that he knew the victim and that she had been in his car, but he claimed that she was acquainted with friends of his that were driving his car. When questioned by the court, the Petitioner confirmed that he was sober at the time he entered his guilty plea and acknowledged that he admitted to the facts of the killing at the guilty plea hearing.

The State called Gerald Melton, Public Defender for the Sixteenth Judicial District, to the stand. Mr. Melton represented the Petitioner in the original proceedings. He received discovery from the State, making him aware that the Petitioner confessed to the murder. Mr. Melton had viewed a videotape of that confession, and the Petitioner did not appear to be impaired on the tape or during subsequent discussions with Mr. Melton. The Petitioner did not admit to Mr. Melton that he killed the victim; however, the Petitioner did acknowledge various aspects of the statement he had given to authorities. According to Mr. Melton, the Petitioner claimed he had no memory beyond the events that occurred inside his car. Mr. Melton stated that the evidence collected at the crime scene was consistent with the details

the Petitioner provided in his statement. Mr. Melton asserted that, contrary to the Petitioner's testimony, the Petitioner wanted to enter a plea.

The trial court subsequently entered an order finding that the Petitioner was not entitled to relief because he had not established the DNA Analysis Act criteria for testing. The court reasoned as follows:

> [The Petitioner's] confession and the evidence linking the [P]etitioner to the crime left no room for a reasonable belief that DNA testing could provide exculpatory information that would have changed his prosecution or conviction. Not only was there no alternative scenario originally given by [the Petitioner] for DNA testing to prove, but also the [P]etitioner's testimony during the hearing did not indicate that testing could be exculpatory as he indicated he was not sure if he had committed the offense.[1]

It is from the order of the trial court denying the petition that the Petitioner now appeals.

**Analysis**

On appeal, the Petitioner argues that the trial court erred in determining that he did not meet the criteria for DNA testing under the DNA Analysis Act. Specifically, he seeks DNA testing "for the sole and exclusive purpose of demonstrating his innocence." The State, in response, argues that the trial court properly concluded that there is no reasonable probability that the Petitioner would not have been prosecuted or convicted if DNA testing revealed DNA profiles that did not match the Petitioner's.

Preliminarily, we are constrained to note that our review in this case is handicapped by the Petitioner's failure to include in the record the transcript of his guilty plea to second degree murder. Additionally, the Petitioner has failed to include the written plea agreement and the judgment of conviction. While the Petitioner states in his brief that there is no evidence of a confession, it is clear from testimony at the post-conviction hearing that a statement was given to authorities, and the statement is not included in the record. The facts of the offense are paramount to our review of the issue presented by the Petitioner. When a party seeks appellate review, there is a duty to prepare a record which conveys a fair, accurate, and complete account of what transpired with respect to the issues forming the basis of the appeal. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983). Notwithstanding

---

[1]The trial court also determined that the application for analysis was made to unreasonably delay the execution of sentence or administration of justice. However, the trial court's rationale for this finding refers back to its first conclusion of no reasonable probability that the Petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis.

these critical omissions and the lack of development of needed facts at the hearing, we will address the Petitioner's claim on the record before us.

The Post-Conviction DNA Analysis Act of 2001 provides that persons convicted of second degree murder may "file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence." Tenn. Code Ann. § 40-30-303. Under this Act, the trial court shall order DNA analysis after providing notice and an opportunity for the State to respond, if the following criteria are met:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;
>
> (2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;
>
> (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and
>
> (4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304.[2]

Regarding the first factor in section 40-30-304, the petitioner must show "a reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis." Tenn. Code Ann. § 40-30-304(1). "[F]or purposes of the Act, we must assume that DNA testing will reveal exculpatory evidence . . . ." Jack Jay Shuttle v. State, No. E2003-00131-CCA-R3-PC, 2004 WL 199826, at *5 (Tenn. Crim. App., Knoxville, Feb. 3, 2004). This Court noted that "[a] 'reasonable probability' of a different result exists when the evidence at issue, in this case potentially favorable DNA results, undermines confidence in the outcome of the prosecution." Sedley Alley v. State, (" Alley II "), No. W2006-01179-CCA-R3-PD, 2006

---

[2]The Petitioner makes no argument that he is entitled to testing under the discretionary provision of section -305.

WL 1703820, at *14 (Tenn. Crim. App., Jackson, June 22, 2006) (quoting Sedley Alley v. State, ("Alley I"), No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at *9 (Tenn. Crim. App., Jackson, May 26, 2004)). This Court cannot ignore existing evidence when considering "potentially favorable DNA results." Alley I, 2004 WL 1196095, at *9. In other words, "[t]he convicted defendant requesting post-conviction DNA analysis is not provided a presumption of innocence, and the reviewing court need not ignore the proof supporting the conviction." Alley II, 2006 WL 1703820, at *14.

The post-conviction court is afforded considerable discretion in determining whether to grant a petitioner relief under the Act, and the scope of appellate review is limited. See Shuttle, 2004 WL 199826, at *4 (citation omitted). In making its decision, the post-conviction court must consider all the available evidence, including the evidence presented at trial and any stipulations of fact made by either party. Id. The lower court may also consider the opinions of this Court on direct appeal of a petitioner's convictions or the appeals of a petitioner's prior post-conviction or habeas corpus actions. Id. On appellate review, this Court will not reverse unless the judgment of the lower court is not supported by substantial evidence. See Willie Tom Ensley v. State, No. M2002-01609-CCAR3-PC, 2003 WL 1868647, at *4 (Tenn. Crim. App., Nashville, Apr. 11, 2003).

In essence, the Petitioner's argument on appeal is that he is not the perpetrator of this offense and that testing of the items requested in his petition will prove his innocence. He is seeking DNA testing in order to establish the identity of a third party. However, identifying the donor of the DNA left inside the Petitioner's vehicle and around the crime scene would not exonerate the Petitioner as the perpetrator of this murder. Such evidence would at best simply establish that a third party had, at some point in time (but not necessarily at the time of the crime), been inside the Petitioner's vehicle, been present in that public area, or been in contact with the victim. See Dennis R. Gilliland v. State, No. M2007-00455-CCA-R3-PC, 1998 WL 800191, at *4 (Tenn. Crim. App., Nashville, Mar. 3, 2008) (citing Alley I, 2004 WL 1196095, at *10).

The Petitioner gave a confession to authorities detailing the murder, and the evidence substantiated this statement. He voluntarily pleaded guilty to the crime, acknowledging the facts supporting his conviction at the guilty plea hearing. It was not unusual for the TBI to cease DNA testing when a plea agreement had been reached. Moreover, the Petitioner could not even state for certain at the post-conviction hearing that he did not commit this crime, simply opining that DNA testing would clear him of the murder. Such a fishing expedition is not authorized by the Act.

The Petitioner also seems to suggest that, if testing reveals DNA that does not belong to him, he should be able to upload the DNA to the database to see if there is a match.

However, in  Alley II, this Court clearly concluded that a DNA database search is not permitted under the Act.  2006 WL 1703820, at *9.

Contrary to the assertions of the Petitioner, he has failed to meet the "reasonable probability" standard of Tennessee Code Annotated section 40-30-304.  Any typing of his blood would not have produced exculpatory results or proved his innocence.  Accordingly, we conclude that the post-conviction court did not abuse its discretion in finding that the Petitioner had not established the qualifying criteria for DNA testing.

### Conclusion

For the reasons stated herein, we conclude that the post-conviction court did not err in denying the Petitioner's request for DNA testing.  The judgment is affirmed.

_____
DAVID H. WELLES, JUDGE